## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Newline Holdings, LLC,

      Appellant,

      v.

Kevin Scott, Thomas H. Hooper, and
Patrick S. Layng,

      Appellees.

Case No. 21-cv-6346

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

In this bankruptcy appeal, creditor-Appellant Newline Holdings, LLC challenges the bankruptcy court's order voiding its attempt to modify the automatic bankruptcy stay in debtor-Appellee Kevin Scott's Chapter 13 bankruptcy case. For the reasons explained below, the bankruptcy court's order is affirmed.

## I.     Background

### A.     Scott's Chapter 13 Petition

On February 15, 2019, Scott filed a petition for relief under Chapter 13 of the Bankruptcy Code. [5-2] 10–74. Attorney Angelica Harb represented Mr. Scott in filing his petition. *Id.* at 59. Scott's schedules identified his only real property as a single-family home located at 15035 Evers Street, Dolton, Illinois, valued at $101,071. *Id.* at 25. Scott's other property included: a car, valued under $8,000; other household property worth $1,900; and $340 in cash. *Id.* at 20–21, 24–28. For secured debt, Scott listed a claim of $19,374.39, owing to the Cook County Clerk and Cook County Treasurer, secured by his home. *Id.* at 27. Scott listed Appellant Newline Holdings,

LLC[1] to receive additional notice regarding this debt. *Id.* at 28. As for income, Scott listed his employment income as $0.00 and his spouse's monthly take-home income as $3,033.14. *Id.* at 37–38. Scott reported that he received monthly short term disability income totaling $1,122.29. *Id.* at 38. Scott reported an expense of $415 monthly in real estate taxes. *Id.* at 39.

Scott also filed a Chapter 13 Plan, proposing to pay the Chapter 13 trustee $635 per month for thirty-six months. *Id.* at 75. Scott proposed that the trustee would pay the Cook County Clerk $19,374.99, with monthly payments of $322.91 per month. *Id.* at 76. Scott proposed that the other creditors, including unsecured creditors, would receive 100%. *Id.* at 77–78.

On March 11, 2019, Newline filed an objection to the confirmation of Scott's Chapter 13 Plan. *Id.* at 97–100. In it, Newline asserted that on June 3, 2016, it purchased the 2014 real estate taxes for Scott's home and paid a total of $2,254.76. *Id.* at 97. Newline stated that since it purchased the 2014 real estate taxes, it also paid the real estate taxes for 2015, 2016, and 2017 and that those payments totaled $20,601.37. *Id.* In the objection, Newline alleges a slightly higher amount of tax debt ($20,601.37 instead of the $19,374.30 Scott claimed in the Plan), seeks a 12% interest rate, and asks that the payments be made to it, instead of Cook County. *Id.* at 99.

---

[1] Newline is a real estate tax lien purchaser. Under the Illinois Property Tax Code, a lien in favor of the county for accrued taxes arises automatically on all real property each year; if the taxes are paid, the lien is extinguished. *Newline Holdings, LLC v. Thomas*, No. 21 C 01277, 2022 WL 1185376, at *1 (N.D. Ill. Apr. 21, 2022). If they go unpaid, however, the county can conduct a tax sale, where a tax purchaser such as Newline may purchase the property and receive a certificate of purchase which it can use to obtain title to the property if the delinquent taxpayer fails to redeem his property within about two years. *In re LaMont*, 740 F.3d 397, 400 (7th Cir. 2014). The taxpayer redeems his property by paying the tax purchaser, through the county clerk, all amounts due. *Id.* at 400–01.

Subsequently, Scott filed an Amended Plan adopting these changes proposed by Newline. *Id.* at 117–22. As a result, the Amended Plan proposes that Scott make monthly payments of $800 to the trustee for thirty-six months, with $458.27 payable per month to Newline. *Id.* at 117–18. The Amended Plan remained unchanged with respect to the proposal to pay 100% of claims to unsecured creditors. *Id.* at 120.

## B.     Amended Plan Confirmation and Stay

On June 4, 2019, the bankruptcy court entered an "Agreed Order Providing for Stay[2] Relief Upon Default." *Id.* at 141. The Agreed Order directed Scott to commence making timely payment of real estate taxes throughout the pendency of bankruptcy, starting with the first installment of 2018 real estate taxes. *Id.* The court also ordered Scott to begin making plan payments starting thirty days after the entry of the order. *Id.* at 142. The order cautioned:

> [I]f Tom Vaughn, Chapter 13 Trustee fails to receive two 'timely' post-petition monthly trustee payments and if the debtor fails to bring the trustee post-petition current within fourteen (14) calendar days after Creditor or its attorney mails notification to the Debtor and his attorney, the stay shall be automatically terminated and modified/annulled as to Creditor, its principals, agents, successors and/or assigns as to the property securing its interest, upon filing of notice of same with the clerk of the court.

[5-2] at 142. The bankruptcy court also entered an order confirming Scott's Amended Plan. *Id.* at 143.

---

[2] The automatic stay is a "statutory injunction against efforts outside of bankruptcy to collect debts from a debtor who is under the protection of the bankruptcy court." *Saint Catherine Hosp. of Ind., LLC v. Ind. Family & Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015) (citing 11 U.S.C. § 362). The stay bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

3

### C.     Default and the First Court Hearing

According to the trustee's report of the period from the filing of the Chapter 13 petition through November 26, 2020, Scott paid a total of $13,507.00 to the trustee, of which $11,238.86 was disbursed to Newline. *Id.* at 166.

On August 10, 2021, Newline filed a Notice of Modification of the Automatic Stay (August 10 Notice) stating:

> [T]he Automatic Stay has been modified. Relief is hereby granted and Newline Holdings LLC their successors and assigns are free to pursue its rights as to the property commonly known as to 15035 Evers Street, Dolton, Illinois 60419 regarding PIN 29-10-402-014-0000 pursuant to the terms of the Order entered June 4, 2019 (attached hereto), Debtor having failed to comply with provisions therein. A Notice of Default (attached hereto) in compliance with the requirements of the Order was sent on July 20, 2021, and cure of the default was not made in the required time.

*Id.* at 170. This August 10 Notice attached a Notice of Default letter addressed to Scott and his attorney, Ms. Harb, dated July 20, 2021. *Id.* at 174. The attached July Notice of Default letter stated that the Cook County Treasurer's website reflected that Scott was in default for the first installment of real estate taxes in 2020, in the amount of $2,356.75. *Id.* It stated that unless Scott: (1) tenders the amount due plus additional penalty due to the Cook County Treasurer within fourteen days; and (2) pays $100.00 to Newline's attorney within fourteen days, the bankruptcy stay would automatically terminate. *Id.* at 175.

On August 23, 2021, Scott filed a motion to reinstate the automatic stay. *Id.* at 185, 189–90. The motion asserted that Scott paid the delinquent property tax installment in the amount of $2,500.00 on August 18, 2021. *Id.* at 189–90. Scott

explained he made a "slight excess payment" to the Cook County Treasurer to cover any late payment charges he may have incurred. *Id.* at 190. Scott also stated he was "substantially current with his Trustee Payments." *Id.*

In response, Newline filed a written opposition stating that the 2020 first installment real estate taxes were not paid within fourteen days of the Notice of Default, as required under the Agreed Order, and requested that the bankruptcy court therefore deny Scott's motion to reinstate the stay. *Id.* at 197.

On September 14, 2021, the bankruptcy court held a hearing on Scott's motion to reinstate. [7-1] at 1. The bankruptcy judge stated: "I see zero harm to this tax purchaser, zero harm from a little delay. There is no prejudice to them. On the other hand, I've got an order that the debtor entered into voluntarily for reasons I do not understand." *Id.* at 3. The bankruptcy judge gave Scott's attorney time to file a reply brief with citation to authorities supporting his motion to reinstate. *Id.* at 3–4.

Scott filed a reply brief on October 5, 2021. [5-2] at 230. In it, Scott represented, through a sworn affidavit, that he did not receive Newline's Notice of Default letter dated July 20, 2021 and first became aware that Newline was seeking to lift the automatic stay when Newline sent him, via letter, the August 10 Notice (which Newline also filed on the docket). *Id.* at 230, 238. According to Scott, he received the August 10 Notice on August 13 and contacted his attorney the same day. *Id.* at 230. He then paid the past due property taxes on August 18, five days after receiving the August 10 Notice. *Id.* Scott stated that his attorney also did not receive the Notice of Default and only became aware of the issue on August 10, 2021, when Newline filed

5

the August 10 Notice. *Id.* Scott also represented that he promptly paid past due taxes in the two prior instances when he received notice, but that this time, neither he nor his attorney received notice, as had occurred in the past. *Id.* at 231–32.

In response to the bankruptcy judge's request that Scott cite legal authority, he relied on the "broad equitable powers of Section 105(a) to impose the automatic stay as an expression of injunctive relief." *Id.* at 233. Scott argued that he would suffer irreparable harm if the court did not reimpose an automatic stay. *Id.* at 234. He stated that he is wheelchair bound and relies only on social security disability income and his wife's $40,000 salary as income. *Id.* He was "unsure that he could find a comparable rental within his budget with wheelchair access." *Id.* Scott also cited Rule 60(b)(6), which provides that the court may provide relief from final judgment, order, or proceeding. *Id.* at 235.

### D. The Second Court Hearing and the Court's Opinion Voiding the August 10 Notice

At an October 19, 2021 hearing, the bankruptcy court indicated its belief that "the debtor didn't get the chance to cure that he was entitled to under" the Agreed Order, "and the windfall" to Newline "is massive." [7-2] at 1, 8. The court, however, granted Newline leave to file a sur-reply before ruling. *Id.* at 12. Newline filed a sur-reply. [5-2] at 251.

On November 22, 2021, the bankruptcy court issued an opinion granting Scott's motion. *Id.* at 259–70. The bankruptcy court found that the August 10 Notice "was the first notice to Scott and his lawyer of the default" and that Scott was entitled to fourteen days from the August 10 Notice to cure his default. *Id.* at 264. Because he

cured the default eight days later, the bankruptcy court explained, Newline was "not entitled to modification of the stay" and the August 10 Notice "is void and did not effect a modification of the stay." *Id.* The bankruptcy court noted that it was making its finding pursuant to 11 U.S.C. § 105, "which permits the court to issue any order that is necessary or appropriate to carry out the provision of Title 11 [the Bankruptcy Code]." *Id.* at 264 n.2. The court held that, alternatively, to the extent the August 10 Notice constituted an order, the court would grant relief from that "order" under Federal Rule of Bankruptcy Procedure 9024, which itself applies Federal Rule of Civil Procedure 60. *Id.* The bankruptcy court reasoned that Rule 60 allows courts to vacate judgments where the judgment would cause an extreme and undue hardship to a party, and here, leaving the August 10 Notice in effect would cause an extreme and undue hardship to Scott. *Id.* at 264–65. The bankruptcy court also noted that Scott "could get to the same result" if the court reimposed the automatic stay through an injunction issued under 11 U.S.C. § 105. But the bankruptcy court ultimately found "no need" to impose an injunction under Section 105 because the August 10 Notice was ineffective to modify the stay. *Id.* at 269–70.

On November 24, 2021, Newline filed this appeal challenging the bankruptcy court's opinion finding the August 10 Notice void and maintaining the bankruptcy stay. *Id.* at 271–85.

## II.    Analysis

### A.    Jurisdiction & Standard of Review

Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court. Orders in bankruptcy cases qualify as final "when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). A bankruptcy judge's order granting or denying relief from an automatic stay is final and appealable. *Id.* Thus, this Court's jurisdiction to adjudicate this appeal is secure. *Id.*

In this case, Newline contends that the bankruptcy court erred in interpreting its own Agreed Order. The parties dispute what standard of review applies in this context. Newline argues that the proper standard is *de novo*, citing cases applying a *de novo* standard to a reviewing court's examination of a lower court's interpretation of its own consent decree. [17] at 8 (citing, *e.g.*, *Bailey v. Roob*, 567 F.3d 930, 940 (7th Cir. 2009))[3]. This Court agrees with Scott, however, that a more deferential standard applies here. *See* [16] at 8. The Seventh Circuit has instructed that reviewing courts "owe substantial deference to bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced that it amounts to an abuse of discretion." *In re Res. Tech. Corp.*, 624 F.3d 376, 386 (7th Cir. 2010); *see also In re Consol. Indus.*, 360 F.3d 712, 717 (7th Cir. 2004) (explaining that the "bankruptcy court is the best judge of the meaning of its own order, and we will not

---

[3] *Bailey* is not a bankruptcy case.

disturb its reasonable interpretation"); *Pusser's (2001) Ltd. v. HMX, LLC*, No. 11 C 4659, 2012 WL 1068756, at *5 (N.D. Ill. Mar. 28, 2012) ("Where a bankruptcy court interprets its own order . . . such interpretation is entitled to more deference and is reviewed for an abuse of discretion."). A bankruptcy court abuses its discretion when it premises its decision "on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011) (quoting *In re Wiese,* 552 F.3d 584, 588 (7th Cir. 2009)).

For the reasons explained below, this Court finds that the bankruptcy court did not abuse its discretion.

## B.    The Bankruptcy Court Acted Within Its Discretion in Interpreting the Agreed Order

Newline primarily argues that the bankruptcy court erroneously interpreted the Agreed Order in finding the August 10 Notice void. Scott counters that the bankruptcy court correctly interpreted the Agreed Order. This Court agrees with Scott.

In finding the August 10 Notice void, the bankruptcy court relied upon 11 U.S.C. § 105 which permits it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Although Section 105(a) "does not give the bankruptcy court carte blanche—the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code—it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *In re Caesars Ent. Operating Co., Inc.*,

9

808 F.3d 1186, 1188 (7th Cir. 2015) (internal citations omitted). Among other things, Section 105(a) gives the bankruptcy court equitable power to interpret and enforce its own orders, *see In re Litton*, 330 F.3d 636, 647 n.1 (4th Cir. 2003), and to reconsider prior orders, *see In re Lenox*, 902 F.2d 737, 740 (9th Cir. 1990).

Here, the bankruptcy court interpreted paragraph 5 of the Agreed Order which states:

> [I]f Tom Vaughn, Chapter 13 Trustee fails to receive two 'timely' post-petition monthly trustee payments and if the debtor fails to bring the trustee post-petition current within fourteen (14) calendar days after Creditor or its attorney mails notification to the Debtor and his attorney, the stay shall be automatically terminated and modified/annulled as to Creditor, its principals, agents, successors and/or assigns as to the property securing its interest, upon filing of notice of same with the clerk of the court.

[5-2] at 142. The bankruptcy court correctly construed this paragraph to provide that Newline may obtain a modification of the automatic stay by filing a notice with the court, but only if (1) Scott is more than fifteen days late in paying his taxes: (2) Newline mails him and his attorney notice of the default; and (3) Scott fails to pay the taxes within fourteen days of the mailing of the notice from Newline. *Id.* at 262. The bankruptcy court explained that the "obvious purpose of the requirement" that Newline mail notice to Scott is to provide Scott a chance to cure before the stay is lifted. Given this purpose, the bankruptcy court reasoned, the lack of *actual* notice to Scott and his lawyer deprived him of the opportunity to cure. *Id.* at 263. Thus, according to the court, to permit the August 10 Notice to be effective under these circumstances would "cause a gross injustice" because Newline would be able to obtain the tax deed to Scott's property that is worth over six times more than the debt

10

Scott currently owes to Newline. *Id.*[4] For these reasons, the bankruptcy court, exercising its power to interpret its own order under Section 105(a), found the August 10 Notice void to the extent it purported to modify the automatic stay. *Id.* at 263–64. The bankruptcy court found that because the August 10 Notice was the first notice to Scott and his lawyer of the default, Scott was entitled to fourteen days from August 10 to cure, and that Scott in fact cured the default eight days later. *Id.*

The bankruptcy court acted within its discretion in interpreting its own Agreed Order under Section 105(a). To be sure, the literal language of the Agreed Order permits Newline to trigger a modification of the bankruptcy stay if Scott fails to timely pay his taxes within fourteen days after Newline "mails notification" to Scott and his attorney. [17] at 8. But the clear purpose of the Agreed Order is to hold Scott responsible for timely tax payments while minimizing his exposure to more harsh results by allowing him the opportunity to cure in the event of defaults. It is not an abuse of discretion for the bankruptcy court to interpret the phrase "mails notification" to require that Scott *actually* receive the mailed notification; otherwise, the language providing Scott the opportunity to cure would be rendered useless. Reading the Agreed Order in this manner comports with Congress' purpose in enacting the automatic stay, which is "one of the fundamental protections afforded to debtors by the bankruptcy laws." *In re Grede Foundries, Inc.*, 651 F.3d 786, 790 (7th Cir. 2011) (quotation omitted). Specifically, the stay preserves the debtor's remaining

---

[4] Although prejudice is not a factor to be considered under the Agreed Order, the bankruptcy court reasoned that Newline had failed to explain how it was prejudiced by Scott's failure to pay taxes on time and thus waived that argument. *Id.*

assets and ensures a "systematic equitable liquidation procedure for all creditors." *Id.* (quoting *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982)). The stay also protects the debtor from creditors by "stopping 'all collection efforts, all harassment, and all foreclosure actions' while permitting the debtor 'to attempt a repayment or reorganization plan.'" *Matter of Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (N.D. Ill. 1995) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978)). Requiring actual notice of default furthers Congress's goals in enacting the automatic stay provision by protecting the debtor—here, Scott—from his creditors while he completed his Chapter 13 repayment Plan.

Given these goals, the bankruptcy court acted within its discretion by interpreting the Agreed Order to require *actual* receipt by Scott of a creditor's default notice before Scott's period to cure begins. This Court will not disturb the bankruptcy court's reasonable interpretation. *In re Res. Tech.*, 624 F.3d at 386.

## C. Newline's Arguments Are Unavailing

Newline advances several other arguments on appeal, but for the reasons explained below, none are persuasive.

Newline argues that the bankruptcy court abused its discretion by even undergoing an interpretation of the Agreed Order because an Agreed Order is akin to a "consent decree" which the parties discussed and negotiated without the court's input or substantive review. [17] at 6–7. This contention is meritless. Newline cites no authority for the perplexing proposition that a court lacks authority to interpret its own order—agreed or not. Moreover, Newline's attempt to analogize agreed orders

12

to consent decrees does not help its case. Like agreed orders, a consent decree is a "judgment of the court" which a court has the authority to oversee, approve, and construe. *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002).

Continuing its analogy to consent decrees, Newline argues that the bankruptcy court's interpretation of the Agreed Order, like a district court's interpretation of a consent decree, should be reviewed *de novo* rather than under an abuse of discretion standard. [17] at 8; *see Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) ("We review a district court's interpretation of a consent decree *de novo*."). Yet Newline cites no precedent suggesting that a bankruptcy court's entry of an agreed order gives rise to *de novo* review. To the contrary, the Seventh Circuit has instructed reviewing courts to give substantial deference to a bankruptcy court's interpretation of its own orders. *In re Res.*, 624 F.3d at 386.

Newline also argues that the bankruptcy court erred by focusing myopically on the interests of Scott, the debtor, rather than the countervailing interests of Newline, the creditor. [17] at 11–12. Newline's argument here boils down to a dispute with the bankruptcy court comment that lifting the automatic stay would result in a "windfall" to Newline. *Id.* According to Newline, no "windfall" would result. Instead, under the Illinois statutory scheme governing purchasers of tax liens, Scott would not have lost his home immediately and automatically; instead, Newline would have had to petition for the tax deed in Illinois state court and Scott would have had the opportunity to defend the state court case before losing his home. *Id.* at 12; *see also Newline Holdings*, 2022 WL 1185376, at *1 (noting that a "tax purchaser seeking to

13

preserve its rights must file a petition for a tax deed in the circuit court and must give notice of the expiration of the redemption period to anyone with an interest in the property"). In Newline's view, the bankruptcy court exaggerated the prejudice to Scott while downplaying Newline's prejudice, given Newline's statutory right to redeem the property. But this Court cannot say that the bankruptcy court abused its discretion in weighing the equities. Even though Newline could not have automatically collected the tax deed, the bankruptcy court was correct in noting that Scott would suffer great prejudice without the automatic stay. Without the stay, Scott's creditors could all attempt to collect his debts. And Newline would have named Scott as a respondent in its state court petition for a tax deed, subjecting him to additional litigation. Moreover, the bankruptcy court focused on this potential prejudice to Scott because, as it explained in its opinion, Newline failed to explain its own prejudice, and thus, waived that argument. [5-2] at 263. This Court thus cannot say that the bankruptcy court abused its discretion in the manner it considered the equities of the case.

Newline next contends that the August 10 Notice is not void because the so-called "mailbox rule" presumes Scott received the Notice of Default even if, as is the case here, Scott attests he did not actually receive the Notice of Default. [13] at 20–25. The "mailbox rule" gives rise to a "rebuttable presumption that documents duly served by mail have been received" but only "upon either evidence of actual mailing, such as testimony of the person who mailed the letter, or proof of procedures followed in the regular course of operations." *In re Bruce*, 610 B.R. 603, 611 (Bankr. E.D. Wis.

14

2019); *see also Kuchar v. AT & T Pension Benefit Plan-Midwest Program*, No. 06 C 0059, 2007 WL 838985, at *4 (N.D. Ill. Mar. 13, 2007). Although evidence of "mailing is evidence of delivery," "almost any evidence may be refuted" and the court can determine "whether the presumption of delivery has been overcome." *Vincent v. City Colleges of Chi.*, 485 F.3d 919, 923 (7th Cir. 2007). Here, the bankruptcy court correctly found that no presumption of delivery arose under the mailbox rule because Newline submitted no proof of mailing. The court also correctly found that even if Newline submitted proof of mailing entitling it to a presumption of delivery, Scott rebutted that presumption by submitting an affidavit attesting that he did not receive the Notice of Default. [5-2] at 267.

Finally, Newline quibbles with the bankruptcy court's discussion of alternative grounds for voiding the August 10 Notice—vacatur of the August 10 Notice under Federal Rule of Civil Procedure 60(b) and reimposing the automatic stay as injunctive relief. [17] at 15–17. Because this Court has already found that the bankruptcy court acted within its discretion under Section 105(a) in interpreting the Agreed Order, it need not assess these alternative grounds.

## III. Conclusion

For the reasons explained above, the bankruptcy court's decision voiding the August 10 Notice is affirmed. The Clerk is directed to enter judgment affirming the decision of the bankruptcy court. Civil case terminated.

E N T E R:

Dated: November 28, 2022

_____
MARY M. ROWLAND
United States District Judge